Ms. Clare, you may proceed. Good afternoon. May it please the Court, I'm Alison Clare, Assistant Federal Defender on behalf of Mr. Martin. Your Honors, the magistrate judge in this case erred by denying an evidentiary hearing, or in lieu of a hearing, considering the affidavits that we presented. And his analysis of the motion for an evidentiary hearing as to the certified claim is extremely brief. It's at tab 10, page 12, and it consists of a single paragraph regarding Claim 3. And it's a paragraph that is riddled with errors that I want to run through very briefly. First, Judge Hollow states that Petitioner failed to exercise diligence in developing this claim, which would, of course, bar a federal evidentiary hearing under the ADPA. However, Judge Hollow's analysis of the state court pleadings is erroneous. This claim was raised for the first time in 1998, first to the California Court of Appeals, then to the California Supreme Court. You have the text of that petition at page 5. It was identical in both courts. Judge Hollow says that Mr. Martin wasn't diligent because he never filed a motion for an evidentiary hearing in those proceedings. California has no such motion. Unlike Federal procedure, there is no need for a motion in order to obtain an evidentiary hearing in state court. As I'm sure you know, it's an original writ system. And when an original writ is filed in an appellate court, either the intermediate court or the Supreme Court, the justices can either appoint a referee or send the case to superior court for a hearing. It looks to me like there would just be nothing to hold an evidentiary hearing for. I mean, the claim that he should have put on a psychiatrist and a psychologist, well, the psychologist's report is really bad for the guy. And the psychiatrist's report is really bad for the guy. Like the brief says, he's retarded. The psychiatrist estimates his IQ is between 80 and 90, which is not. And then the claim for an evidentiary hearing is made that the lawyer rendered ineffective assistance by making him testify. Well, I can't even understand that. There's no way to make somebody testify. As for counseling somebody to testify or advising him to testify, that seems like it's just quintessentially a matter of strategy and judgment that you can't second guess. I'll address the latter of the two claims because that's the one that's certified on appeal, and I think it's the most important one from Mr. Martin's perspective. The allegation is that counsel A did not advise the client one way or the other about whether or not it was proper to testify. Although the mental health reports were certainly full of both damaging and useful information from an affirmative defense perspective, one thing they made very clear to the lawyer is that he had a brain-damaged client who had serious comprehension problems. Well, what the lawyer had here is he had a psychiatrist and psychologist who were going to say, your client's a little dumb and a little nuts, but I can't say he didn't know what he was doing. And then the best way to prove to the jury, what the lawyer wants to prove to the jury is, my client is such a nitwit that he didn't know what he was doing. He wouldn't know from one moment to the next what was going on. Big surprise to him that they kidnapped the guy that they put in the trunk of the car. Best way to prove that, since the psychiatrist and psychologist aren't that good, is put the client on a stand and let him make a nitwit of himself. Putting the client on the stand to deny intent, completely apart from the mental health issues in this case, which are related to intent. But whenever you have an intent case, it is certainly the defense lawyer's duty to find a way to convey that, because intent is subjective. Having it in the defendant's own words is the most powerful. But here we had an exculpatory statement that was made in a police interview that was going to come in and did come in through the testimony of Detective Brown. So without putting the defendant on the stand, the jury was going to hear that Mr. Martin had stated that he was with the co-defendants when the abduction and murder were carried out, but that he did not participate, even in a way that could reasonably be construed as aiding and abetting by the prosecution, in the kidnapping, and that he did not know that the incident... And you're assuming that if the lawyer had only persuaded the guy not to take the stand, the jury would have believed his exculpatory statement to the cops? I think that once you've got an exculpatory statement, whether it is in the context of a police interview... The man tells the police, I didn't do it, I'm innocent. And you think, oh, a jury will believe that because he says so. Well, an exculpatory statement, regardless of whether it is made to the police or from the witness stand, is going to be viewed with some skepticism by the jury, certainly. No kidding. But when you have the statement, it gives you the theory and the argument. And what you had... Well, there are two points I want to make. One is as to assessing the credibility of the statement itself, and that does involve the mental health issues. The other goes to the other witnesses against my client. First, when the jury is asked to infer from circumstances what someone's intent was, whether the defendant knew of the criminal goals of his colleagues and shared them, you're inferring from the circumstances based on assumptions we all make about how a normal mind works. When you have someone who is brain damaged and not making the same interpretations of other people's behavior that an average Joe would, the same reasoning doesn't apply, and the defense needs to be able to argue that. And it had opportunities to do so, which are documented in the declarations we submitted on this claim, the declaration of the defense investigator about the availability of special education records and other documentary evidence showing that the man was brain damaged, the social history information, the family information about Mr. Martin's history and specific other experiences of not picking up social cues and understanding what was going on around him in large social situations. Circumstantial evidence? Absolutely. Could it have been put on by the defense to refute the prosecution theory as to intent? Absolutely, and without putting Mr. Martin on the stand. What this defense lawyer did was to put a client on the stand who he knew was unable, in Dr. Glovis's words, to conceptualize his own story. And he provided the prosecutor with their closing argument, which was you can't believe this man or the defense theory because he contradicts himself. He said one thing to the police and another thing on the stand. That was completely predictable and completely preventable. And the lawyer let it happen. But, Your Honor, I don't think you even have to... And what about the testimony of the other witnesses? Wasn't it pretty? It was really quite strong. There were three witnesses who were present on the evening who did not witness the abduction itself nor the shooting, but who were in the apartment into which the men came and went during the night, three women. Every one of them testified at the trial to things that they said Mr. Martin did that they had never mentioned nor had any witness mentioned during preliminary hearing testimony or during the testimony of the co-defendants. So all of that testimony, apart from the credibility problems of these witnesses, was eminently impeachable. And because there were no eyewitnesses to the kidnapping or the shooting other than Mr. Martin, those three provided what was at best very, very shaky testimony. They had personal relationships with the other co-defendants, reasons to dissemble potential liability of their own that they were trying to minimize by cooperating with the prosecution against Mr. Martin. But again, on this issue, what started out as Claim 3, I want to submit that the investigator fully, in the declaration we supplied, fully supported the contention that Mr. Martin did not understand that he had a right not to testify. He did not want to testify, and that the lawyer had no interest in making sure he understood his rights and giving him the opportunity to effectuate them. I think that that failure to advise, and we do allege that it was a wholesale failure to advise, not just bad advice. Do you know whether any complaints were made against counsel to the Bar Association? I do not know, Your Honor. And this just sounds like gross neglect if it's true. I agree. That's why we asked for an evidentiary hearing. Once we were able to find the investigator and find that he not only corroborated what the magistrate judge says was an improbable claim, when we found a witness who not only corroborated it but gave additional damaging testimony against the defense lawyer, we asked for a hearing so that we could explore that. I don't get that. I mean, one of the really big strategic judgments you make when you're doing a – when you're defending a criminal case is, shall my client take the stand? And frequently there will be disagreement among the various people involved with the defense about whether it's a good idea. The fact that the investigator thinks that the lawyer was making a terrible mistake to me has no weight at all. I don't understand why that should weigh anything. Well, of course, the primary evidence here is Mr. Martin's – You hire an investigator to do various things for you, and maybe you listen to his feelings and advice on how your client's going to do, but it's your decision when you're the lawyer. When it comes down to an ultimate attorney decision, of course that's true. But here, the declaration of the investigator corroborates several points we've made. One is that Mr. Martin did not understand his own rights in this matter. The second is that the lawyer himself had very little personal contact with his client. His preparation for this case – Where is the declaration, incidentally, that says that – It is attached to the motion tab 9, and it is labeled proposed exhibit E. It's at the end of the document. My lawyer never told me that I had a right not to testify. That is in the pro se petition itself. Not in the declaration. I have to apologize to the Court. I did not include in the excerpts. There was a declaration called Petitioner's D, which was attached to the amended – I beg your pardon. You have it. You have it in front of you. The amended petition is tab 8. At the end of it, the last – the second to last appendix to that document is a declaration of Mr. Martin. My error in this case was in not specifically designating this declaration of Mr. Martin, which said he did not want to testify, did not know he didn't have to, and would not have. This was not designated. If you check the docket sheet, Your Honor, which is the final tab, you'll see that we do have a docket entry for when the original signed declaration was submitted after the fact, and my declaration explaining the reasons for that procedure is attached to this document. In any case, if we get a remand for an evidentiary hearing or a consideration of this evidence, I will certainly expand the motion to expand to encompass Petitioner's D as well as Petitioner's E. Again, the motion did not specifically mention D, but made very clear in its text that we were seeking to present the testimony of both Mr. Martin and Mr. Elliott. Mr. Lee, the defense lawyer, now practices in the State of Rhode Island outside the subpoena power of the Eastern District. We'll deal with that when we get there on remand. Thank you, Your Honor. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn. Hear, ye, hear ye, all parties. Having had ten minutes, the Honorable United States Court of Appeals for the Ninth Circuit will now depart for its fourth intercession. Thank you, Your Honor. Thank you, Your Honor.
judges: Beezer, O'scannlain, Kleinfeld